+FRANCIS L. HARTMAN ET AL. V. SAMUEL A. HUNTER, TREAS.

**1. AUTHORITY TO MAKE TAXES AND ASSESSMENTS.**

It is not entirely clear in Ohio that the liability for taxes and assessments is one created by statute, so far as assessments for local improvements are concerned. The primary principle which lies at the base of any right to make such assessment, is the supposed local benefit to the particular lands assessed; and might thus be regarded as a liability arising from considering the equities of the matter, and it might be held that the statute has simply pointed out the means by which the amount of such local benefit and liability should be ascertained and declared. *Quere.*

**2. STATUTE OF LIMITATIONS DOES NOT RUN AGAINST POLITICAL DIVISIONS.**

The general doctrine that the statute of limitations does not run against the sovereign, does not apply to any division of the state, such as counties, townships or municipal corporations.

**3. SIX YEARS STATUTE OF LIMITATIONS DOES NOT RUN AGAINST DITCH ASSESSMENTS.**

The six years statute of limitations cannot be successfully pleaded against an action by a county, brought under sec. 1104, Rev. Stat., to recover old township ditch assessments.

**4. TREASURER NOT ENTITLED TO FIVE PER CENT. ON TAXES COLLECTED BY SUIT.**

A treasurer suing under sec. 1104, Rev. Stat., to collect taxes is not entitled to the five per cent. penalty provided for in sec. 1094, Rev. Stat.

BENTLEY, P. J.

The action below, which is brought here by a petition in error to reverse the judgment of the court of common pleas, was brought by Hunter, treasurer of Lucas county, against the plaintiffs in error, to recover taxes and assessments, as provided by sec. 1104, Rev. Stat. The plaintiff filed his petition in the case in the court of common pleas on January 6, 1894; which petition, following the form provided as sufficient in sec. 1104, states in substance, after averring the official character of the plaintiff, alleges that the defendants, the Hartmans, are the owners of certain lands described in the petition, and that the other defendants claim some title or lien or interest therein; that "the taxes and assessments heretofore duly levied and assessed for lawful purposes stand charged on the duplicate of said county for the year 1893, against the following parcels of property and in the following amounts, respectively." Then follows the description of one parcel of land, and then following that, in figures after a dollar sign, "591.42," the amount of taxes and assessments.

Said real estate is situated in Lucas county, Ohio, and the taxes and assessments aforesaid are due and unpaid.

The plaintiff asks that the defendants herein be required to set up their claims and interests in said property, if any they have, or be forever barred from asserting the same, that decree be rendered for said taxes and assessments, together with a penalty of five per cent. thereon and the costs of this action; that the real estate aforesaid be ordered sold free of all claims and interests of said defendants, and that out of the proceeds of the sale said decree be first paid, and for such other relief as may be just.

To that petition the defendants, Hartman, filed an answer admitting that they were the owners of the real estate in question, "and that taxes and assessments heretofore levied and assessed stand charged on the duplicate of said county for the year 1893, against said real estate in the sum of $591.42. These defendants allege, that said taxes and assessments, amounting to said sum of

---

* This decision was reversed by the Supreme Court in 56 O. S., 175, on the ground that exemption from the statute can be asserted only by the sovereign; and that the action, therefore, was barred in six years.

$591.42, include and are made up of taxes and assessments for the following purposes in the following amounts:

State and county taxes for general purposes for the year 1893 and previous years,
  including penalty for non-payment thereof.. ......................................................... $124.72
Assessment for construction of stone road No. 16, levied in the year 1893.................. 6.40
Assessment for construction of Crockett township ditch, levied in the year 1893......... 60.64
Assessment for costs of Crockett township ditch, levied in the year 1893.................... 6.78
Assessment for cleaning ditch No. 56, levied in the year 1889..................................... 55.26
Assessment for construction of township ditch No. 40, levied in the year 1886............ 103.84
Assessment for costs of township ditch No. 40, levied in the year 1886...................... 3.54
Assessment for construction of Crockett ditch, levied in the year 1885....................... 6.40
Assessment for construction of Hartman township ditch, levied in the year 1885........ 204.00
Assessment for costs of Hartman township ditch, levied in the year 1885................... 19.84

Then for a first defense the answer proceeds:

"These answering defendants say that as to the following items of said taxes and assessments included in said sum of $591.42, the cause of action herein accrued more than six years next before the commencement of the same':

Assessment for construction of township ditch No. 40, levied in the year 1886............ $103.84
Assessment for costs of township ditch No. 40, levied in the year 1886.. .................... 3.54
Assessment for construction of Crockett township ditch, levied in the year 1885......... 6.40
Assessment for construction of Hartman township ditch, levied in the year 1885........ 204.00
Assessment for costs of Hartman township ditch, levied in the year 1885................... 19.84

There are in figures following that, a footing of $337.62. I have not verified that.

To that answer the plaintiff below filed this demurrer: "Now comes the plaintiff and demurs to the answer of the defendants filed herein." That demurrer was sustained, and the defendants not desiring further to plead, the court thereupon rendered judgment as upon default upon the petition for the full amount of $591.42 and interest thereon from the 19th day of February, 1894, the judgment being rendered sometime in March, 1894, and the judgment further providing as follows:

"Together with his costs herein expended, and also a treasurer's penalty as thereon of five per cent. The court further finds that the said sum with interest and penalty as aforesaid, is the first and best lien on the premises in the petition described."

And orders the premises sold for the payment of those amounts. It is that judgment that is sought to be reversed by this proceeding in error.

There arises in the case, as presented to us, two questions. One is, whether the six years' statute of limitations runs against such a claim as is set up in the plaintiff's petition, or such a claim as is made up of the amounts and for the purposes specified in the answers to which the demurrer was sustained; and the other question is, that even if the statute of limitations does not apply, was the court of common pleas warranted, under the statute, in assessing the penalty of five per cent. upon the full amount of the judgment thus rendered?

Of course we must apply to this proceeding the ordinary rule, that a reviewing court should not reverse the judgment of the court below, unless it is manifestly and clearly erroneous. Considering now, the first of these questions—whether the six years' statute of limitations can be successfully pleaded against such an action as the treasurer brought for township ditch assessments—it will be necessary to examine, to some extent, or to allude to, the statutes bearing upon the subject, certain authorities that have been cited, and some that we have considered that perhaps were not cited.

The basis of the claim of the plaintiff in error as to the statute of limitations is primarily this: that this is an action by the treasurer—being under sec. 1104 —which is denominated by the Code a "civil action," and that the statute of limitations applies to it as in civil actions in general; and further, that the liability for township ditch assessments is a liability created by statute, and as such is subject to the limitation of six years under the provision of the Code. This

presents, as I have said, a very interesting and important question. It is a question that has never been directly decided by the Supreme Court of the state —as I might say, not decided at all. On three different occasions the Supreme Court has had an opportunity to decide it. It has been presented to that court in each of three cases, but the court disposed of each of them upon other grounds, and in one case, expressly declined to pass upon this particular question. Those cases are *Reynolds* v. *Green*, 27 O. S., 416; *Brenchwna* v. *Dake*, T. C. 31 O. S., 652; *Treasurer* v. *Martin*, 50 O. S., 197.

It is argued that this liability is one created by statute; that without the statute, there would be no such liability. As to that matter, it will not be necessary for us to come to a definite conclusion; but I may suggest, that although the Supreme Courts of certain states—California being one—have practically decided that the liability for taxes and assessments is one created by statute, and subject to the statutes of limitation of those states, yet in this state there may be room for argument upon that question, as far as it concerns assessments for local improvements. It may be that it is, but it will be observed that ordinarily, in passing upon such a question as this, the courts have said that such a liability is one which would not exist but for the *ipse dixit* of the statute. And it is to be observed that in cases of this kind the primary thing which lies at the base of any right to make such an assessment, in theory at least, is the supposed local benefit to the particular lands assessed; and it may be that, with that idea thus resting at the base of this matter, that it should not be regarded as a liability created by the terms of the statute, but that it is a liability arising from considering the equities of the matter, and that the statute has simply pointed out the means by which the amount of such local bene , and liability should be ascertained and declared. As I say, we do not hold this, but simply call attention to the fact that it is not entirely clear, as we think, that this would be a liability created by statute, within the meaning of the statute of limitations.

It will be proper to allude to some of the statutes involved in such an assessment as this, and I will call attention to sec. 4521, which provides what the trustees shall do in applications to them for the construction of county ditches. It provides for the ascertainment and payment of compensation to landowners for their lands to be taken, and provides further that:

"The trustees shall pay such compensation out of the general township fund and apportion the aggregate amount thereof equitably upon the lands benefited by said ditch, and the same shall be a lien on said lands, the same as other taxes, and said apportionment shall be certified by the clerk to the county auditor within forty days from such payment, and placed upon the duplicate against the land so assessed, and collected, in the same manner as taxes are collected, and when collected shall be paid over to the township entitled thereto, to reimburse said general township fund, provided that any landowner may pay the amount assessed against his lands to the township treasurer at any time before the same is certified to the county auditors."

And sec. 4547 provides for the assessment of the expenses of constructing the ditch—sec. 4521 being as to damages to be paid to the landowner:

"As soon as the work shall be completed in conformity with the sale (that is, the sale of the work of constructing the ditch) and to the satisfaction of the trustees, they shall immediately certify to the auditor of the county the amount each section sold for, adding the proportionate amount of costs and expenses of such sale, together with a correct description of each piece of land upon which the same is assessed; and the auditor shall place the same on the duplicate, to be collected as other state and county taxes are collected; and the trustees shall at the same time certify the amount due to each person, and the auditor shall draw orders for the payment of such amount out of the county treasurer; but any person interested may pay the amount of the purchase money and proportionate share of costs and expenses as aforesaid to the trustees at any time before the same are charged on the duplicate, to be paid by the trustees to the purchaser of such section."

These sections provide how assessments may get upon the duplicate in township ditch matters. One is to be certified in forty days, as provided in sec. 4521,

after the payment and apportionment as prescribed in the section; and the other must be immediately certified by the trustees to the county auditor to be placed upon the duplicate. There is no other way provided for the collection of these assessments for township ditches, *in invitum*, as against the owner of the lands. If he does not pay them voluntarily, they are placed upon the county duplicate, and are collected as provided by law for the collection of taxes and assessments by the treasurer.

It may be well enough in determining this question of the application of the statute of limitations to see what is involved, necessarily in the claim that applies. Sec. 1104 makes no distinction as to the kind of taxes or the kind of assessments. It is "taxes and assessments standing upon the county duplicate." There may be assessments for township ditch taxes, they may be for county ditches, they may be for road improvements, they may be for municipal improvements certified to the auditor under the provisions of the statute. All taxes and assessments of whatever kind are included in the general terms used in sec. 1104. Now as to the municipal assessments, sec. 2297 is provided, which provides:

" The lien of an assessment shall continue two years from the time the same is payable, and no longer, unless the corporation shall before the expiration of the time, have caused the same to be certified to the auditor of the proper county, for entry upon the tax list for collection, or shall have caused the proper action to be commenced in some court having jurisdiction thereof, to enforce such lien against such lots or lands, in which case the lien shall continue in force so long as such action is pending, and any judgment obtained, under and by virtue thereof, remains in force and unsatisfied. "

In the first place, the municipal code provides that such an assessment shall be a lien upon the lands. It is a lien upon the lands before it is certified to the county auditor, by direct provision of law. The inception of the lien, for the assessment, arises before there is any certificate of it placed upon the duplicate. It provides that the lien shall last for two years, for two years only, unless a suit shall have been begun within the two years, or it shall have been certified to the auditor and placed upon the duplicate. If a suit has been begun within the two years, it is not necessary that it be placed upon the duplicate at all; but the lien shall continue until the judgment is obtained and still further, as long as the judgment remains unsatisfied. Or if no such action has been begun prior to the certificate of the assessment to the county auditor, still, the lien shall continue if it is certified to the county auditor within the two years, and, by the direct provision of the statute, that lien shall continue as long as the assessment remains upon the county duplicate unpaid.

In the argument of this case, we suppose it to be conceded that whatever may be the ruling as to the statute of limitations applying to an action of this kind under sec. 1104, the statute does not apply as against the lien of taxes and assessments by reason of their being placed upon the duplicate. So long as they stand charged upon the duplicate, and unpaid, the lien is preserved and the county treasurer may proceed to collect at least in any other way provided by statute other than by this civil action; that is, he may collect perhaps by distress or by rule of court, or by attachment; and we must have in view these provisions of the law in determining whether it is intended by the legislature that this statute should apply in cases of this kind. If we should apply it against municipal assessments placed upon the tax duplicate within the two years, we must incorporate into this section which provides that the lien shall continue as long as it remains standing upon the duplicate, the statute of limitations, which would cut it off after six years, if that is the statute that applies. Further than that, we must find that notwithstanding the provisions of sec. 1104, themselves, are absolute as to the duty of the court to render judgment, it was intended by the legislature that these provisions should thus be modified and affected by the statute of limitations of six years.

It is to be remembered that the statute of limitations was passed many years before there was any such provision in the statute as are incorporated in sec.

1104. That section was passed for the first time in 1876, and the Supreme Court has declared directly, that until that section was passed, there was no authority for the county treasurer to institute any such action as this. So we are brought back to this inquiry: "Whether the legislature in 1876, in providing for the first time this remedy intended that notwithstanding its direct and positive provisions as to what shall be done in the case, unpaid taxes and assessments properly stand on the duplicate nevertheless, the action must be begun within the terms allowed by the statute passed so many years before, viz.: the statute of limitations." To my mind that inquiry is of paramount force in the case; that is, it is more important than the others to which I have directed attention. Section 1104 provides that in an action of this kind—

"It is sufficient, having made the proper parties, for the treasurer to allege in his petition that the taxes and assessments, or either, stand charged on the duplicate or duplicates against said premises, the amount thereof, and that the same are unpaid, and he shall not be required in the petition to set forth any other or further special matter relating thereto ; and said duplicate or duplicates shall be received as *prima facie* evidence on the trial of the amounts and validity of such taxes and assessments, and of the non-payment thereof; and if it is found that such taxes and assessments, or any part thereof, are due and unpaid, judgment shall be rendered for the same, penalty and costs, and said premises, or so much thereof as may be necessary to pay the same, shall be by the order of the court sold to pay the same; and out of the proceeds of the sale shall first be paid the said judgment, the balance being distributed as may be just."

It will be observed that this section directly provides that if it be found on trial that the duplicate contains these taxes and assessments, and that they appear thereon to be unpaid, that this is sufficient evidence for the rendition of such a judgment, and if the court finds that to be the fact, it shall render judgment for the full amount of the taxes and assessments and penalties standing upon the duplicate. In a case of this kind the court must necessarily find that they are standing upon the tax duplicate, and that they never have been paid. It is admitted that these assessments in question have not been paid, and that they stand charged upon the tax duplicate. If the court follows strictly the provisions of sec. 1104, it can do no other than to render the judgment provided for in that section.

So the question recurs to what was intended by the act of 1876—the new act, providing a new remedy. Did the legislature intend to subject that action to the provisions of the general statute of limitations? It seems to us that it is at least not clear or manifest that such was, and in our judgment it was not the intention of the legislature, and unless it is, we have no right to reverse the judgment of the court of common pleas, based upon this construction of the statute.

There are some considerations which might be suggested other than those that I have spoken of, which ought to be entertained in determining whether or not the legislature probably did intend to apply this statute. And in this connection it might be well to have in mind the general purposes for which these assessments are made. If the statute of limitations applies to these assessments, it must also apply not only to municipal assessments, but to everything in the line of taxes which the county or the township might assess—to everything, unless it may be the taxes by the state itself, which are going to the state itself, for it has been held in many cases in this state that the general doctrine that the statute of limitations does not run against the sovereign, does not apply to any division of the state, such as counties or townships or municipal corporations; it is so held in the following cases, at least: *Bank* v. *Price*, 8 O. S., 299; *Williams* v. *First Presbyterian Society, etc.*, 1 O. S., 478; *State, etc.* v. *Blake*, 2 O. S., 147; *Oxford Twp.* v. *Columbia*, 38 O. S., 87; and perhaps in other cases; now when we consider the time of the passage of this act and the time of the passage of the statute of limitations and all the other provisions of law bearing upon this subject—the basis of this assessment, its public character, based as it is and as it must necessarily be in theory at least, upon public necessity and public welfare, we are led to at least doubt the propriety of holding that it was intended by the

Hartman et al. v. Hunter, Treas.

legislature that this provision of 1104 sec. should be considered as modified as to any action under it for the collection of taxes or assessments by the provisions regarding the limitation of six years; and therefore, upon that branch of the case, we conclude that the proper order should be to affirm this judgment.

Turning now to the other question presented, viz.: the five per cent.; we have already held in a case which has been affirmed by the Supreme Court, in *Borck* v. *Treasurer*; or, as it appeared in the Supreme Court, *Hunter* v. *Borck*, 51 O. S., 320, that as to certain taxes and assessments the treasurer is not entitled to the five per cent. penalty. In this claim for taxes and assessments, as it appears by the answer, there were taxes for general, state and county purposes for the year 1893 and previous years, including a penalty for non-payment of $124.72. Nowhere in the answer or in the petition, or anywhere in the record, is that amount differentiated or divided up. We do not know how much of this gross sum is for the taxes of 1893, or how much for previous years, or what amount of it is penalty. Yet the court assessed a penalty of five per cent. not only upon this sum of $124.72 made up, as it is admitted of taxes as to which the charge for penalty had already accrued—such a penalty as is provided should be placed upon the duplicate by the auditor, that is fifteen per cent., but it allowed the five per cent. upon the old taxes, upon the penalty charged, and upon the new taxes of 1893—not only that, but five per cent. upon all these old assessments, as to which it is claimed penalties had accrued.

Certainly upon the amount of these penalties the five per cent. cannot be legally assessed and upon assessments levied, as the answer states, back in 1885 and 1886, and upon the taxes prior to 1893, there was no authority to assess the five per cent. penalty. And in considering the matter further, we are inclined to think that in an action of this kind it was not designed by the legislature to allow the five per cent. to be assessed at all, even as to the taxes of 1893, which should be paid at least by December 20, 1893, although this action was begun in January, 1894, and before the semi-annual settlement of the treasurer with the auditor.

If this five per cent. is to be added, it must be by the direct provision of sec. 1104; but anything that may be added under that provision applies to all assessments and all taxes indiscriminately, if we give effect to the ordinary meaning of the words themselves. But sec. 2295 provides that if corporation assessments are not paid by a certain time, they shall bear a penalty of ten per cent., and it shall be added upon the duplicate. And if this five per cent. shall be reckoned upon the township assessments, by the same authority it shall be reckoned upon municipal assessments. So there would be not only the ten per cent. penalty provided in this sec. 2295, but the additional five per cent. penalty, not only upon the taxes, but upon the penalty of ten per cent. itself. And so as to personal taxes. This sec. 1104 covers personal taxes as well as other kinds. And so when they are delinquent, and the auditor has placed upon the tax duplicate a penalty of ten per cent. against them, it is provided directly by statute that when the treasurer collects them he shall be allowed five per cent. for the collection not in addition to but out of the ten per cent.; but if the five per cent. may be reckoned upon township assessments, under the provisions of secs. 1104 or 1094, by the same provisions this five per cent. would be upon these personal taxes also.

I call attention to the view of the Supreme Court, being an affirmance of the case of *Hunter* v. *Borck, supra*. I find this on page 716, N. W. Rep., vol. 37:

"The five per centum penalty awarded to the treasurer by sec. 1094, was designed to stimulate his activity in collecting the taxes unpaid on the 20th of December and the 20th of June, so that, in making his semi-annual settlement with the county auditor, he might be able to report such taxes as paid, and not liable to come again upon the duplicate as delinquent. But, to entitle the treasurer to the compensation allowed under sec. 1094, he must render the prescribed service. He must proceed to collect, *and collect* the delinquent taxes, by distress or otherwise, together with the penalty of five per centum on the amount of the taxes so delinquent. It is conceded that the treasurer cannot earn his commission by merely standing behind the counter, and receiving the tax the next day after the 20th of December."

The statement of the Supreme Court is, that not only must he begin proceedings to collect, but he must actually collect the amounts; and it is stated that he shall do that, and have the money prior to the semi-annual settlement, so that the taxes shall not in any way remain upon the duplicate as delinquent. He cannot, in an action of this kind ordinarily accomplish that collection within the time prescribed—that is, between the time allowed for the payment of taxes—December 20, and the time in February when he must make his settlement. And the same might be said as to the other semi-annual settlement. That is, in the ordinary process of the law it would be difficult for him to get a judgment and actually collect the money. Not only that, but this money when collected is for the fees of the treasurer for making the collection. Now, an action might be begun by one treasurer, and his term of office expire before the suit was ended; and if judgment is to be rendered long after the semi-annual settlement for the five per cent., the question might arise, who is to have that five per cent. for the collection, the treasurer who instituted the suit, or the treasurer'who actually made the collection? Beside that, sec. 1104 as it now stands, provides as to Lucas county any way, that these suits shall be begun in the name of the treasurer, but by the prosecuting attorney, and he shall do the work of making these collections, and shall be allowed whatever is reasonable out of the county treasury for making that collection. If the treasurer, without doing a thing to make the collection but simply to allow the use of his name which he could not help, can have five per cent. in addition to that, it would result that for this collection a double fee would be allowed by statute. It is difficult for us to think that that was really intended by the legislature. It is true that in this case of *Hunter* v. *Borck, supra,* following the language which I have quoted, it is said:

"If he would proceed to collect, and collect, the delinquent tax, otherwise than by distress, he may collect by a rule of court, as provided by sec. 1097 Rev. Stat., or by attachment and garnishee process, as described in sec. 1104 Rev. Sstats., or by special effort in person or through an agent, and not by simply holding himself out as ready to receive the taxes due, or making a formal request of the taxpayers, or giving notice to taxpayer generally to pay their deinquent taxes."

As there is in that statement that he might begin under sec. 1104, it might provoke an argument that the Supreme Court meant by that to say that he might get his five per cent. if he did commence an action in any of these ways; but we do not think that overthrows the direct language used before; and neither does it follow that because the opinions say that he might begin the action under sec. 1104, the court intends to hold that if he began such action, he may have the five per cent. penalty adjudged, no matter when the collection is in fact made. We think, therefore, that this penalty for the five per cent. penalty was wholly erroneous, and the judgment in that regard will be reversed, but otherwise will be affirmed, and under the statute, the costs in error will be divided between the parties.

*Swayne, Swayne & Hayes,* for plaintiff.

*J. A. Barber,* prosecuting attorney, for treasurer.